UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | No. 87-CR-555(LAP) |
| PETER MONSANTO, | ORDER |
| Defendant. | |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Peter Monsanto's motion for
compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).
(See dkt. no. 148.)  The Government opposed the motion, (see
dkt. no. 150), and Defendant replied, (see dkt. no. 152).  For
the reasons set out below, the motion is GRANTED.

## I.    Background

Mr. Monsanto is seventy-one years old, having served over
thirty-four years of a life sentence.  (Dkt. no. 148 at 1.)  He
was convicted at trial of RICO violations, RICO conspiracy,
narcotics conspiracy, operating a continuing criminal enterprise
("CCE"), six counts of possession of firearms, four counts of
federal income tax evasion, and three counts requiring criminal
forfeiture.  See United States v. Simmons, 923 F.2d 934, 940 (2d
Cir. 1991).  Mr. Monsanto received the following sentence: (1)
life imprisonment without parole on the CCE count; (2)
consecutive terms of imprisonment totaling twenty-two years on
the firearms and tax-evasion counts; and (3) twenty years

1

imprisonment for each RICO count, consecutive to each other but concurrent with the CCE count.  (See dkt. no. 87-CR-555.) Functionally, Mr. Monsanto received a total sentence of life imprisonment without parole plus twenty-two years.

In addition to Mr. Monsanto, sixteen other defendants were named in the original indictment.  (See generally id.)  Ten of those defendants have since died, and the remaining defendants have all been released from prison for years.  (See dkt. no. 148 at 2.)

The charges arose out of Defendant's position as the leader of a heroin distribution network, known as the Monsanto Crew, that functioned from 1981 through 1986 and distributed massive amounts of heroin in New York City and the northeastern United States.  See Simmons, 923 F.2d at 940.  The Monsanto Crew was an extremely violent group that consistently used fierce tactics to secure its position in the heroin business and to enforce discipline within its own ranks.  Id. at 941.

Mr. Monsanto's prior criminal history included misdemeanor drug possession (1971), misdemeanor possession of a forged instrument (1971), felony possession of a dangerous weapon (a pistol) (1973), and manslaughter (1976).  (See Presentence Report ("PSR"), Exhibit B to dkt. no 150 at 2-5.)  The manslaughter offense involved Mr. Monsanto's shooting a long-time acquaintance who "had reportedly beaten Monsanto's wife

2

several days before the offense and had made it known that he
intend[ed] to kill Montsanto."  (Id. at 4.)  "Two loaded,
operable handguns were recovered from the vehicle in which [the
deceased] was seated at the time of his death."  (Id.)

During the over thirty-four years of his incarceration, Mr.
Monsanto has been a model prisoner.  For example, as reflected
in his most recent Reentry Plan-Progress Report ("RPPR"), it was
suggested that Mr. Monsanto complete the Victim Impact program,
and he followed that suggestion and "has competed numerous
additional programs shown to reduce recidivism."  (RPPR, Exhibit
A to dkt. no. 148 at 1.)  Additionally, "[h]e has only received
one incident report during this entire period of incarceration,"
and he "has maintained clear conduct since September 2011."
(Id. at 1-2.)

The RPPR also indicates that Mr. "Monsanto has worked in
. . .  UNICOR, Food Service, Facilities, Laundry, and
Correctional Services and Recreation," earning "good work
evaluations from his detail supervisors on a consistent basis
throughout his incarceration."  (Id. at 1.)  Mr. Monsanto has
also taken many courses, including business law, concepts of
computers, business management, management, history, and U.S.
History II.  (See id. at 2-3.)  The RPPR concludes as follows:

> Overall, inmate Monsanto has done well during
> incarceration.  He has completed recommended programs
> and interacts with staff and peers in a very

respectful manner.  He has also done well from a work performance perspective[,] earning good work evaluations from all of his detail supervisors.

(Id. at 5.)

Mr. Monsanto received excellent reviews from Bureau of Prisons ("BOP") staff.  For example, Marvin Jones, Food Service Foreman, has known Mr. Monsanto for twenty-seven years and notes that over that time Mr. Monsanto has "maintained a good standing with staff and inmates," "has been an effective leader for the younger guys," and "has had a positive impact on the work environment."  (Exhibit B to dkt. no. 148 ("Ex. B.") at 5.)  Mr. Jones concludes by offering that he believes Mr. "Monsanto is more than prepared for society, and should be given the opportunity to show his growth with a second chance."  (Id.)

On October 23, 2020, Mr. Monsanto made a pro se request to the Warden of FCI Allenwood for compassionate release based on the COVID-19 pandemic.  (See Exhibit J to dkt. no. 148.)  After the Warden did not respond for thirty days, Defendant filed the instant motion with the Court.  (See dkt. no. 148.)

## II.   Applicable Law

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018).  Under that provision, the Court may reduce Defendant's sentence if it finds that (1) "extraordinary and compelling

reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The relevant Guidelines policy statement counsels that a reduction also is not proper unless "[t]he defendant is not a danger to the safety of any other person or to the community."[1]

Under the First Step Act, the Court may exercise its "discretion in determining what are extraordinary circumstances."  United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020).  But a court's finding such circumstances merely permits a defendant's release--it does not mandate it.  See, e.g., United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); United States v. Israel, No. 05-CR-1039 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019).  Ultimately, "[t]he defendant has the burden to show he is entitled to a sentence reduction."  United States v. Lisi, 440 F. Supp. 3d 246, 249 (S.D.N.Y. 2020).

If the defendant establishes extraordinary or compelling circumstances, the Court must still consider the § 3553(a) sentencing factors "to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Those factors include, inter alia, "(1)

---

[1] U.S.S.G. § 1B1.13; see also United States v. Jordan, No. 1:19-CR-478-GHW, 2020 WL 4195353, at *2 (S.D.N.Y. July 16, 2020) ("The relevant policy statement is U.S.S.G. § 1B1.13.").

the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Id. § 3553(a)(1)-(2), (6).

### III. Discussion

Mr. Monsanto has exhausted his administrative remedies--he waited thirty days to file this motion, see 18 U.S.C. § 3582(c)(1)(A)--so the Court considers the merits.

### a. Extraordinary and Compelling Circumstances

First, the Court finds that Mr. Monsanto has demonstrated "extraordinary and compelling circumstances warranting release" under § 3582(c)(1)(A) for two reasons: (1) his rehabilitation, remorse, BOP staff support, close family contacts, and post-release plan; and (2) the danger posed to him by COVID-19.  As set out above, Mr. Monsanto has been a model prisoner, receiving excellent work reports throughout his incarceration.  For example, David Nau, an Administrator in the Food Service Department, commented favorably on Mr. Monsanto's work quality and attitude, concluding his observations with the following:

6

> [O]verall I can say that while he was an inmate at USP
> Lewisburg and now an inmate at FCI Allenwood, I do
> believe he has been rehabilitated and if given the
> chance could return to society and become a productive
> individual and to finish his life surrounded by his
> family and friends.

(Ex. B at 3.)  Similarly, Darnley Grover, the Food Service

Foreman, lauded Mr. Monsanto's dependability and work ethic,

stating that Mr. Monsanto is a "role model for his fellow

inmates, and on a personal note, I can unreservedly say that

Monsanto will fit perfectly in society."  (Id. at 4.)  And there

is a raft of letters to the same effect from numerous

supervisors who have worked with Mr. Monsanto over the years.

(See generally id.)

   Mr. Monsanto's fellow inmates also offered strong

recommendations on his behalf.  For example, Terry Middleton,

Northeast Florida Vice President for the "Congressionally

recognized Reality Check Program" and a fellow inmate of Mr.

Monsanto's at FCI Allenwood, writes that if he had to sum up Mr.

Monsanto's character, he would underscore his "integrity."  (Id.

at 16.)  Mr. Middleton also notes that Mr. Monsanto consistently

emphasized his "remorse for his youthful indiscretions."  (Id.)

   Upon release, Mr. Monsanto plans to reside with his wife,

Jacqueline Monsanto, in Connecticut.  (See dkt. no. 148 at 5.)

Between them, they share numerous children, grandchildren, and

even great-grandchildren, all of whom are law-abiding citizens.

(See Ex. B at 18-19.)  And as their letters make plain, Mr.

Monsanto's family members support his release.  The following

examples are instructive:

- Ms. Monsanto, now seventy-six years old, writes
  about all the family moments Mr. Monsanto has missed
  and that she "just want[s] [her] family to be whole
  again."  (Id. at 19.)

- Mr. Monsanto's daughter, Jacqueline, writes that she
  was two years old when Mr. Monsanto went into
  prison, so she has no memory of her father as a free
  man.  (See id. at 21.)  She says that "I too have
  been sentenced to life without the possibility of
  parole" and that "[m]y sentence is much harsher than
  the one [my father] received."  (Id.)  She then
  describes what she missed of her father at different
  ages but writes joyfully that she now has a son of
  her own, born November 29, 2019, "who would greatly
  benefit from the love and guidance of his
  grandfather in his life."  (Id. at 22.)

- Mr. Monsanto's son, Destineze, now thirty-five years
  old, writes that he also never knew his father as a
  free man.  (See id. at 23.)   Destineze has two
  daughters of his own, one ten and the other five.
  (See id.)  They all would welcome Mr. Monsanto to
  the family.

In addition to the letters from his family members, Mr.

Monsanto also has an employment plan, even at seventy-one years

of age.  Paul Tallini, CEO of American Litigation Consultant

LLC, has written to inform the Court that, if Mr. Monsanto is

released, he would hire him to counsel teens and young adults to

lead law-abiding lives.  (See id. at 14.)  Mr. Tallini himself

served nearly thirty years in prison, some with Mr. Monsanto,

and believes that he and Mr. Monsanto would make a compelling advocacy team.  (See id.)

With respect to the COVID-19 pandemic, as noted, Mr. Monsanto is seventy-one years old.  As the reports attached to Mr. Monsanto's motion conclude, "[a]ge is by far the strongest predictor of an infected person's risk of dying."  (Exhibit K to dkt. no. 148 at 4.)  Indeed, according to one report citing data from the CDC and Johns Hopkins University, eight out of ten deaths in the United States from COVID-19 have been in people sixty-five and older.  (See id. at 10.)  While the Court acknowledges BOP's monumental efforts to minimize the spread of the virus in its institutions, it is notoriously difficult to do in a congregate setting.  There can be no doubt that, at his age, Mr. Monsanto is at great risk.

### b. Section 3553(a) Factors

Second, the § 3553(a) factors counsel in favor of release. There is no doubt that Mr. Monsanto's crimes of conviction were among the most serious.  But he has already received a serious punishment: thirty-four years' imprisonment and counting.  While general deterrence is always important, especially in these kinds of cases, thirty-four years, in the Court's view, fulfills that sentencing objective.  As noted in the letters quoted above, there is no need for further incarceration to protect the public from further crimes by this defendant.  Finally, as also

noted above, all of Mr. Monsanto's co-defendants have either died or been released.  To keep him incarcerated until the end of his life would constitute a particularly cruel sentencing disparity.

## IV.  Conclusion

For the reasons set out above, Mr. Monsanto's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [dkt. no. 148] is GRANTED.

**SO ORDERED.**

Dated:    February 2, 2021
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge